UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PHILIP BERQUIST, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-04-376 |
| | § | |
| WASHINGTON MUTUAL BANK, F.A., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This case arises under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* (ADEA). Plaintiff Philip Berquist alleges that Defendant Washington Mutual Bank's (WAMU) termination of his employment was motivated by his age. WAMU has moved for summary judgment. Having considered the parties' filings, the Court hereby **GRANTS** summary judgment for Defendant.

### I.    BACKGROUND

The undisputed facts are as follows. Berquist began working for United Savings Bank as an internal audit supervisor in Houston in 1984. In 1992, when United Savings was acquired by Bank United, Berquist stayed on as an internal audit manager. In 2001, when Bank United in turn became part of WAMU, Berquist was offered a separation package but ultimately chose to remain with the company, assisting with the conversion from the Bank United risk rating system to the new WAMU system. He performed this work until late 2002, when Melissa Martinez joined WAMU as head of Corporate Credit Review and reassigned Berquist to the position of Credit Review Officer, a job requiring him to review and approve (R&A) unissued loan review reports. Berquist claims that, during a conference call on December 9, 2002, Martinez remarked that she planned to "attract younger talent" to WAMU.

In February 2003, Martinez visited WAMU's Houston office and criticized the work of each of the employees in Berquist's department, including Berquist himself. During this visit, Martinez reassigned Berquist and others from R&A, instructing them instead to begin preparing Change Request Summaries for loans that had been assigned inaccurate risk levels. One month later, Martinez and another WAMU manager traveled to Houston to give Berquist a Performance Improvement Notice (PIN), a formal written warning that his work was not meeting WAMU's standards. The PIN stated, *inter alia*, that Berquist's "[t]echnical skills and proficiencies are 'operational' in nature and not commensurate with the job function . . . or those required for a Credit Review Officer." Berquist responded to this criticism by noting that all of his prior experience, both at WAMU and with previous employers, had been operational and administrative in nature. He pointed out that "I have never at any time represented to anyone that I have specific expertise in credit review since my responsibilities at both Bank United and Washington Mutual were solely of an administrative and operational nature." The PIN also stated that Berquist displayed a negative attitude and did not complete assignments in a timely fashion. Berquist responded by requesting detailed descriptions of any incidents giving rise to these criticisms. Despite his repeated inquiries, he never received any additional information.

On May 13 or 14, 2003, Martinez and Human Resources employee Julie Aydelotte conducted a telephone conference with Berquist, during which Martinez advised Berquist to try to find a position within WAMU that was more appropriate to his skills. Martinez warned Berquist that, if he was unable to find such a position within 45 days, he would be terminated. Berquist objected that the PIN made him ineligible to transfer within the company and asked that the PIN be downgraded to a less severe warning. Martinez and Aydelotte repeatedly assured Berquist that he had authorization to seek a transfer within WAMU, but they did not downgrade the PIN. Berquist never identified a more suitable job within WAMU, and he and Aydelotte

began discussing severance. On June 26, 2003, however, Berquist was informed that his position was being eliminated and his function moved to California. Berquist's employment with WAMU terminated on August 1, 2003. He and WAMU were unable to reach a severance agreement.

## II.     ANALYSIS

### A.     Summary Judgment Standard

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* FED. R. CIV. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir.), *cert. denied*, 534 U.S. 892 (2001) (internal quotation marks and citation omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the non-moving party." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id*.

To survive a motion for summary judgment, an ADEA plaintiff must first establish a *prima facie* case of discrimination. *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999). Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant to present a legitimate, non-discriminatory reason for the challenged action. *Id.* If the defendant

can make such a showing, the burden shifts back to the plaintiff to prove that the legitimate reason is a mere pretext for discrimination. *Id.* at 966-67.

### B. Berquist Cannot Establish a *Prima Facie* Case of Age Discrimination

It is unclear whether Berquist is claiming that WAMU discriminated against him by eliminating his position (a wrongful termination claim) or by failing to find another position for him (a reduction in force claim). Accordingly, the Court considers each possible claim, concluding that neither can survive summary judgment.

#### 1. Wrongful termination.

To make a *prima facie* case of age discrimination, a plaintiff must ordinarily prove that (1) he is a member of a protected class (*i.e.*, he is more than forty years old); (2) he was qualified for his position; (3) he was discharged; and (4) he was replaced by a non-member of the protected class or by someone younger, or was terminated because of his age. *Id.* at 966. Berquist's claim must be dismissed because he has not advanced any support for the claim that he was qualified for his position.

Berquist's Second Amended Complaint states that "Plaintiff was qualified for the positions he held for the Defendant, and specifically for the position he held at the time of his termination." (Pl.'s 3d Am. Compl. at 10.) At the summary judgment stage, however, once the movant has identified portions of the record that support its position, the non-movant must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

Here, WAMU (the movant) points to Berquist's PIN response, in which he stated, "I have never at any time represented to anyone that I have specific expertise in credit review since my responsibilities at both Bank United and Washington Mutual were solely of an administrative and operational nature." (Ex. A, Def.'s Mot. for Summ. J., at 77-78.) WAMU also points out that Berquist admitted during his deposition that he had no specific expertise in credit review and had never led a credit review. (*Id.* at 60-61.)

In his response to WAMU's motion for summary judgment, Berquist does not provide any evidence that he was qualified for the position of Credit Review Officer. He merely argues that he was qualified for his previous position, that of Senior Credit Examiner, and points to positive reviews of his performance in that position. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4.) Even if true, however, his contention that he was qualified for his previous position does nothing to rebut Defendant's allegations and evidence that he was unqualified for the position that he held immediately prior to his termination. While it is not appropriate, at the summary judgment stage, to make factual findings concerning a plaintiff's compliance with subjective standards, summary judgment may be granted where a plaintiff has, as here, failed to offer any evidence at all that he was qualified for the position from which he was terminated.

Berquist insists that WAMU failed to response to his requests for detailed descriptions of his professional shortcomings. (Pl.'s Resp.at 4-9, 12.) Even if Berquist is correct, however, and WAMU should have provided more information about his performance problems, its failure to do so does not prove that Berquist was qualified for his job. Nor does the fact that Berquist

was given the position of Credit Review Officer in the first place constitute evidence that he was qualified.  (*See* Pl.'s Resp. at 18.)  To hold otherwise would be to eliminate the qualification element of every case involving termination.  Therefore, because Berquist has failed to meet his burden of providing factual support for this element of his *prima facie* case, he cannot make a claim of wrongful termination sufficient to survive summary judgment.

### 2. Reduction in force.

Berquist concedes that his position was eliminated when his department moved to California.  *(See* Pl.'s Response to Def.'s Mot. for Summ. J. at 11.)  He does not appear to contend that he was replaced by another employee.  It appears, then, that his termination was part of a reduction in force (RIF).

> In a[n] RIF case, a *prima facie* case is established by evidence that (1) the plaintiff is within the protected age group under the ADEA; (2) he or she was adversely affected by the employer's decision; (3) he or she was qualified to assume another position at the time of the discharge or demotion; and (4) evidence, either circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching its decision.

*Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir. 1996).

Berquist has put forward no evidence that he was qualified for another position at WAMU.  Instead, he accuses Martinez and Aydelotte of obstructing his efforts to transfer by

refusing to downgrade the PIN. Even if true, however, Berquist's contention that he was prevented from actually transferring does not support a finding that he was qualified for a position at WAMU. Again, Berquist bears the burden of pleading and supporting, at the summary judgment stage, this element of a *prima facie* claim of RIF discrimination. He has not done so. Since he has failed to establish a *prima facie* case for either of his possible claims, Berquist's Complaint is hereby **DISMISSED**, and summary judgment is **GRANTED** for Defendant.

    **IT IS SO ORDERED.**

    SIGNED THIS 7TH DAY OF SEPTEMBER, 2005.

_____
Keith P. Ellison
United States District Judge

    **TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**